Judges, the United States, Court of Appeals, or the 2nd Circuit, hearing, hearing, hearing. All persons have been visited for this, a stated term in the United States, Court of Appeals, or the 2nd Circuit. Draw near, give your attention, and you shall be heard. All right, thank you. Ms. Beard, please have a seat, everyone. And welcome. It's a beautiful day out there, and it's Friday, so what could be better? We have three arguments on the calendar today. I'm told counsel are here and present for each of them. We also have three cases on submission, and I want to thank Judge John Sinatra from the Western District of New York, who is joining us today. We're grateful for his taking the time from a very busy schedule to be here with us. We benefit from his perspective and experience. So the first case on the calendar is 29 Main Street v. the Postal Service. Mr. Serretta, am I pronouncing that right? Yes, Your Honor. Okay. So, Mr. Serretta, you have ten minutes, but you reserved ten of it, two of it, excuse me, for rebuttal, so that gives you eight minutes to start. Let me just make sure everybody's ready. Okay. Floor is yours. Well, good morning, Your Honors, and may it please the Court. I am John Serretta for the appellant, 29 Main Street, LLC. Our position is that the collection of leases and amendments and options at issue here does not give the Postal Service a current option to buy the entire parcel. Right. Well, you're saying it's ambiguous, right? Or are you saying that you think it's unambiguous and just goes the other way? So our A argument, our home run argument, would be it's unambiguous the other way. If you don't agree, if you're not with us on there, then yes, our backup argument is that it is ambiguous and should go back for determination by the fact finder of the party's intent with a full appreciation for the extrinsic evidence, which we think is pretty powerful here. If I could just start with the text subject to your questions, the key language, at least going back to the 1969 option, is the simple title to the leased premises, including the underlying land. And in our view, the interpretive task of addressing what that means, leased premises, including the underlying land, is best answered by going back to the operative section of which describes the following described premises that are subject to the lease. And it says all that certain land. This is at 126 of the joint appendix, section 2 of the 1969 lease. It's all that certain land. It provides a meets and bounds description of that certain land, but then accepting there from about 2,000 square feet on the first floor and most of the basement. So leased premises includes the underlying land. It does. It includes all that certain land. So it includes the land under the basement? Yes. It includes just what section 2 says. All the land, the 48,365 square feet of land. So not the little bit of land where there's shrubs out in front or not the sidewalk or That would still belong to you guys. You own the land up to the sidewalk. They just own what's under the ground. We own all of it. What was leased. I'm saying the option would permit them to purchase what goes straight down and not an inch over, right? Right. We do think that's what the agreement says. As we have arguments in our briefing that I hope to get to that that has been superseded or at the very least on remand, there's additional questions about whether that would be possible to perform. But you're right. That is exactly what it says. It seems like an odd way to sell a piece of property or create an option to buy a piece of property, which is that you'll own the land exactly underneath what you're leasing now, but the rest of it still belongs to us, which might be just a few bits, a few feet here and there, and then some extra space in the building. Right. Quite a bit of extra space, 10,000 square feet in the basement, 2,000 square feet on the first floor. But I admit it, it may seem a little bit incongruous, but at the very least it's ambiguous. And if we get to ambiguity, and which the district court decided not to do, look at the extrinsic evidence, the course of performance evidence here is very powerful. Because in 1988, at the time of this additional space lease, the Postal Service writes a memorandum. This is at 226 of the Joint Appendix. It's by a man named Bradford Meter, a realty appraiser for the Postal Service. And he writes this memorandum at the time of the 1988 negotiations that says the additional 2,183 square feet and most of the basement are not included in the purchase option. He goes on to say this was the conclusion of Mr. Randy Alder, that's another Postal Service commercial real estate specialist, and myself. So they were of the view in the course of the party's performance that it was not an option to buy the whole property. So what do you think fee simple conveyed? I think the fee, in this case it contemplates fee simple title being conveyed to the leased premises, the premises actually subject to the lease, including the underlying land. That is what by its plain terms the agreement says. Now, I agree that that is very awkward, and I think that is exactly why the party's revisited this beginning in 1988. So Mr. Alder writes this, there is a 1988 additional space lease, which has its own purchase option. Just to go back to first year property, if you convey your Connecticut home and it's ten acres to me fee simple, what do I get? You get all of the land and all of the buildings on the land. And that is- Suppose they're easements or right of ways. What happens to them if you're giving me fee simple? Well, you can convey all that you have to give. So if there are easements, my understanding is those easements would remain with the land. But here, just to bring it back to I think the basic first year property principles that you're talking about, Judge Underhill does address those, and he says what they do is they create presumptions, or I'll call them substantive canons of interpretation that normally if you're going to convey the land, it's going to include the buildings. But those are not hard and fast rules. Those are canons about the party's likely intent. And they ought not to be used up front to determine that it's unambiguous. They ought to be used as a kind of tiebreaker if you say the language is ambiguous and if it's not resolved by the extrinsic evidence. And just to go back to that, the 2000 memorandum, after the parties had this market-based approach to the purchase option in the 1988 additional space lease, no reason at all to do that if they thought that the original option was effective or if they thought that it was sufficient to convey the whole property. They would not have this complicated formula where each side gets an appraisal, and then there could be a tie-breaking appraisal from a third party to determine the fair market value of the property if they're exercising that option. It doesn't say anything about superseding, modifying, or rescinding the 1969 lease, right? I'll grant you that. It doesn't even refer to it, right? That is correct. But I think it sort of covers the waterfront of how you would go about exercising an option for the whole property. And the 2000 memorandum- What do you mean it covers the waterfront of what you would do to exercise? It creates an entire alternative edifice of how the parties will go about determining the value and the price of an option to purchase the entire property. And I think that's a recognition that the original option is not fit for purpose. This is confirmed by the 2000 memorandum, which says there are no purchase options available. And I understand that Judge Underhill said, well, it's not making explicit reference to the 1969 purchase option. But at the very least, we ought to be able to go before the fact finder, get into all that extrinsic evidence of the party's intent. But you're kind of arguing two things. I mean, it sounds like right now you're arguing that the 2000 lease is extrinsic evidence that could be considered to understand the intent of the 1969 lease. I thought you were suggesting that the 2000 lease extinguishes the 1969 lease. That is exactly what I'm arguing. I apologize if I was unclear. The 2000 memorandum, we think, does extinguish the 1969 lease. But- But by its own terms, it only covers the other space that's not covered by the 1969 lease, right? Yes, that is the subject of the lease. But in saying there are no purchase options available, we think one reading- You can't purchase these new, the basement and the 8,000 or whatever it is square feet that is not covered in the 69 lease. Well, if you're with me that far, Your Honor, then I think you and your colleagues should reverse and remand. Well, I'm saying that that would be consistent with, I guess, considering the 2000 lease as extrinsic evidence that a fact finder could consider in construing the 69 lease. But you're saying it extinguishes the 69 lease. Yeah, I'm trying- I'm trying to say both in the alternative. I think it does extinguish it. I think at the very least it raises questions for the fact finder about the party's intent and whether it extinguishes it. But if you're not- if you and your colleagues are not with me that far, then at the very least it's useful in determining that there's no- the 1969 lease and option do not convey an option to purchase the whole property. And I guess the last thing I do, we're over a little bit, but does Connecticut or federal common law have a rule with respect to whether you can consider later produced documents in construing a 1969 lease? Oh, I think so. And I think- I don't think it's a particularly- Different jurisdictions have different rules on it. Sure. So if this was the UCC, which it's not, of course, but if this was a sales article to the UCC, you could do course of performance evidence without any threshold showing of ambiguity. We haven't pressed that point. We think you need to at least find ambiguity. But then I would say what you've called the post-execution evidence, what I would call course of performance evidence of how the parties understood this and applied this, is among the most persuasive. Course of performance is one thing. But you were channeling a memo that somebody gave their view as to what the thing means, and they also sort of provide hearsay testimony about what somebody else used to think that it means. Sure. So that's not course of performance, right? I would call it course of performance. At the very least, it's an admission by a party opponent. I mean, the realty appraiser and the- Well, I mean, if you, I guess, if we found it ambiguous, then I suppose the fact finder would go back and hear from those folks as opposed to just hearing third hand what they thought. But they might not be around anymore, right? They might not be, but again, this is a document written by the postal service. It refers to the views of a third person who is also an employee of a postal service. I don't think the court has to address those evidentiary issues now, but we think that will come in at trial. All right. Well, you've reserved two minutes for rebuttal. So we'll now hear from Ms. Turbert. Am I pronouncing that right? Yes, you are. It could be French, Turbert. Yes, I think it is French. Oh, but you've anglicized it. Turbert. Yes, yes. Well, good morning, your honors. May it please the court. My name is Julie Turbert, Assistant United States Attorney on behalf of Appley United States Postal Service. This court should affirm the decision of the district court granting the postal service specific performance to purchase the entire property for $300,000. The district court followed well-established property principles when it properly determined that the 1969 option to purchase the fee simple title to the lease premises, including the underlying land, unambiguously offered to sell the entire property. It seems to me the whole ball game is whether it's unambiguous. And even the district court seemed to acknowledge that there was some ambiguity. I'm just looking at the record. I acknowledge that there is some inconsistency on the face of the fixed price option. This is 32 of the special appendix. And then 19 as well. The phrase the lease premises risks ambiguity by lending itself to two interpretations. I mean, that's exactly what ambiguity is. And so their interpretation is that it means you go straight down, right? The lease premises are some portion of this square. And so the purchase option lets them buy the building that they're leasing and everything straight down under it. And what about the language of the lease is inconsistent with it? Well, your honor, the language of the lease also includes fee simple title on the underlying land. Right. The underlying land of the three quarters that I'm holding up here now. I mean, that would seem to be an odd way to do a land purchase. I might agree with that. But in terms of the language, it's not inconsistent. Is it to say they could go straight down from everything that they're leasing now? It's not inconsistent. You're able to actually the lease also included the parking areas, loading dock and everything around the whole parcel of the property. So so that would be so that the least premises include not just the building, but the certain things around the building. Yes. So, I mean, I think it almost sounds to me like you just conceded that there's ambiguity. But I don't think you really want to do that. No, I don't, your honor. The court may have said that in its district court and its opinion. But it resolved any question of that by applying well established property principles that property conveying land conveys the buildings upon it. I believe that was the cutter case, the Supreme Court. So our position is that the land, the fee simple title conveys the whole property. Simple is sort of a method of conveying title in something, right? It's basically everything. It doesn't provide any guidance as to what is the particular land being conveyed in fee simple, right? You could convey title in fee simple for a portion of the land that you own, right? Yes. But the lease here describes the meets and bounds of the property. It also describes in a one story basement and brick building. This was a lease back arrangement with Mr. Gold, the original lessor at the time. It was an experienced lessor of postal leases. So the United States obtained the right to purchase the property and assigned it to Mr. Gold. And he in turn had conditions for that property. Look, you could write up a document that would do what you're describing. And you would do it differently than here. It would seem to me that then you would have a lease. You would have lease property which explains what they're paying rent on and what they're getting under the lease. And then the purchase option would make it clear that they're getting, you would define it separately. The option property, which would be more extensive. I mean, if you wanted to do what you're saying was intended to the parties, there would be a way to do it without confusion, right? Yes, Your Honor. The option purchase clause, J.A. 52 in the 1969 lease lists the purchase options at the end of each term that they are able to purchase at. And it also includes the rental rates. It still refers to the leased property, right? The leased premises. Yes. And the leased premises is something, it's the whole building. But they're not leasing the whole building, right? Right. The leased premises are, it starts out with a general description of the entire property and then it carves back, you know, a big chunk of the first floor and the basement, right? Well, actually, we lease initially in the 1960 lease, it was about 80% of the first floor and 1,900 square feet. And in the basement, it's a largely unfinished basement area that was not leased because it was not needed at the time. Right. But the purchase option talks about the leased premises and the leased premises define the entire property minus 20% or so of the first floor and most of the basement, right? Right. For the lease. But for the purchase option, it was the whole building that was to be purchased. It was a repurchase agreement with Mr. Gold. Is the phrase lease premises the defined term that you would find in the 1969 lease on the first page? In the purchase option, your honor. No. So. Where it starts out with the description of the entire property land and building and then accepts out from that a portion that's not included in the lease. Is that a defined term? It doesn't define it in quotes like we like to see defined terms. Right. It's a general description of the premises. But then the term leased premises is used in the option. Yes, it is, your honor. But the Postal Service believes that uncovers the whole building. That was the intent of the parties at the time of the 1968 agreement to lease in the 1969. Look, I think you might be right. That might have been the intent of the parties. The issue for us is simply whether it's unambiguous within the four corners of this document that that's what was meant by the words used. So. Okay. Generally, it should mean the same thing in both places, at least premises. On one page, it should mean the same thing, right? On another page, unless it's clear that it shouldn't be something. This was a unique situation where they didn't need this. Those areas initially at the onset. And if I could also respond to Main Street. I want you to believe that the 1969 purchase options were extinguished by the 2000 additional space lease because the sentence. And the memorandum regarding the 2000 lease states there are no purchase options available. However, this sentence merely reflects that the 2000 additional space lease does not contain any purchase options and does not reference the 1969 lease in any way. The fixed price purchase options became irrevocable once the lease was awarded and no amendment altered or extinguished the fixed price options in the 1969 lease. This sentence in the 2000 memo is insufficient to extinguish the four remaining fixed price purchase options in the 1969 lease that were available at the time of the 1969 lease. And then in closing, the Postal Service properly exercised the option and performed all of its obligations under the contract, including paying all of the town taxes for the entire property for nearly 50 years. The parties continue to be able to perform and this court should affirm the decision of the district court. Granting specific performance requiring 29 Main Street to convey the simple title, including the underlying land to the Postal Service. If there are no further questions, the Postal Service rests on its briefs. Thank you. Mr. Serrata, you've got two minutes for rebuttal. Thank you, Your Honor. Just a couple of brief points in rebuttal. First, on the 2000 lease, it's arguably a plausible interpretation that it only relates to the additional space. But it's at least ambiguous that the blanket phrase, no purchase options available, and we think it ought to go back. More, to address more of the substance of my colleague's arguments, there's a lot of intratextual evidence here that premises. Intratextual? Intratextual, I'm sorry, intratextual within the document itself. Not just Section 2, which describes the leased premises, but then Section 8 says you can sublet the premises that are hereby leased. It would be passing strange if they could sublet property that is not leased. And so we think leased premises means the same thing throughout the whole agreement. You can sublet what's been leased, Section 2 describes what's been leased, and the option to purchase is for the premises that have been leased. And closing, just one other point, one other piece of extrinsic evidence which I think is relevant if there were to be a threshold finding of ambiguity. And that is all just right before the litigation starts. And it's at page JA237 from January 2019 when the Postal Service attorneys at this time, before the litigators have gotten involved, says, Hey, we're ready and willing and able to perform. We think we have an option to purchase that is effective under the 1969. So that remains their position. But then the second paragraph of that email at page 237 says, The Postal Service would like to discuss the purchase of the remainder of the property that is the subject of the additional space lease. So as late as 2019, Postal Service attorneys are recognizing that this option to purchase does not cover the additional space. And with that, we'd ask you to reverse. Thank you very much. But of course, we don't get to consider that unless we think that the language of the agreement is ambiguous, right? That's absolutely right. I do think it's worth a peek though, and case law says this, to determine ambiguity as a sort of check if the court has any doubts about whether it is ambiguous. All right. Thank you both. We will reserve decision.